12-04-00240-CV
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


§APPEAL FROM THE 


THE STATE OF TEXAS FOR THE                §     COUNTY COURT AT LAW OF
BEST INTEREST AND PROTECTION
OF L.S.G.
§CHEROKEE COUNTY, TEXAS





MEMORANDUM OPINION
            Appellant L.S.G. appeals from an order of commitment for temporary inpatient mental health
services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered L.S.G. committed to Rusk State Hospital for a period not to exceed ninety days and
entered an order authorizing the Texas Department of Mental Health and Mental Retardation to
administer psychoactive medication to L.S.G. In two issues, L.S.G. asserts the evidence is legally
and factually insufficient to support these orders. We affirm.
Background
            On June 25, 2004, the State filed an application for court-ordered temporary mental health
services requesting that the trial court commit L.S.G. to Rusk State Hospital in order to continue
treatment for a mental illness that, if untreated, would likely make her cause serious harm to herself.
            On June 24, Dr. S. Lahi examined L.S.G., diagnosing her with bipolar disorder mixed with
psychosis. In his physician’s certificate, Dr. Lahi stated that L.S.G. (1) is mentally ill, (2) is likely
to cause serious harm to herself, (3) is suffering severe and abnormal mental, emotional or physical
distress, (4) is experiencing substantial mental or physical deterioration of her ability to function
independently, which is exhibited by her inability, except for reasons of indigence, to provide for her
basic needs, including food, clothing, health, or safety, and (5) is unable to make a rational and
informed decision as to whether or not to submit to treatment. The doctor based his diagnosis on
L.S.G.’s appearing to respond to internal stimulation, her statement that her left knee joint had been
shot, and a report from police that L.S.G. was found walking into traffic. 
            Further, Dr. Lahi asserted that L.S.G. presents a substantial risk of serious harm to herself
or others if not immediately restrained, demonstrated by her behavior and by evidence of severe
emotional distress and deterioration in her mental condition to the extent that she cannot remain at
liberty. His opinion is based on L.S.G.’s crying and her statements that she wanted to get into a
nursing home, that nobody cared for her, and that her knee had been shot. The doctor also noted that
she displayed a labile unstable affect and had walked into the middle of traffic.
            On July 1, Dr. Sethurama Srinivasan examined L.S.G. and diagnosed her with bipolar I
disorder. The doctor believes that L.S.G. is mentally ill and is likely to cause serious harm to herself. 
Dr. Srinivasan based this opinion on L.S.G.’s labile mood. She cries easily and is hyperactive and
overtalkative. After recently losing her husband, L.S.G. was found walking into traffic and
hallucinating that she went to Alto to trade her car and that she had been shot in the knee. 
            At a hearing held on July 6, Dr. Srinivasan testified, first restating his diagnosis that L.S.G.
is suffering from bipolar I disorder and is likely to cause serious harm to herself. The doctor based
his opinion, in part, on L.S.G.’s hallucinations that she drove herself from Tyler to Alto to the
Chrysler dealership to buy a new car and that she had been shot in the knee. He also testified that
she was found walking into oncoming traffic and that the Alto chief of police picked her up because
she was agitated. After being brought to the Rusk State Hospital admission office, L.S.G. was quite
delusional, hyperactive, and complaining of hallucinations that made her angry. Dr. Srinivasan
clarified that contrary to her assertions, L.S.G. had not been shot in the knee. 
            The doctor noted that L.S.G.’s husband died a year ago and L.S.G. has yet to grieve. He also
believes that Rusk State Hospital is the least restrictive environment available at this time. Dr.
Srinivasan noted that L.S.G. is a cooperative patient and, for the most part, has been taking her
medications. However, the doctor does not believe that L.S.G. can provide for her basic needs if
released. L.S.G. is still delusional and manic, refusing her medications on the day before the
hearing. 
            L.S.G. testified on her own behalf. She stated that if released from the hospital, she would
go straight to Alto and pick up her car. She believes that the medication has side effects that affect
her brain. “[B]efore I got to sleep I thought I was in hell. I mean, I thought really maybe I had died
and gone to hell because of this medication’s effects.” L.S.G. denies hearing voices that are not
there. She also does not remember saying that she had been shot. 
            On July 6, the trial court entered an order of temporary inpatient mental health services after
determining that the evidence supports the allegations that L.S.G. is mentally ill and is likely to cause
serious harm to herself, is suffering severe and abnormal mental, emotional, or physical distress,
substantial mental or physical deterioration of her ability to function independently, which is
exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including
food, clothing, health, or safety, and is unable to make a rational and informed decision as to whether
or not to submit to treatment. The trial court ordered L.S.G. committed to Rusk State Hospital for
a period not to exceed ninety days. 
            The next day, Dr. Larry Hawkins submitted an application for an order to administer
psychoactive medication. Dr. Hawkins noted that verbally or by other indication, L.S.G. refused to
take medication voluntarily. He believes L.S.G. lacks the capacity to make a decision regarding the
medication because she is suspicious and paranoid about medications. She is unable to assess risk
versus benefit. Dr. Hawkins believes that she should improve if she is treated with the medications. 
Without them, the doctor believes L.S.G. will cause harm to herself.
            A medication hearing was held on July 13. Dr. C. Plyler testified that based on his review of
L.S.G.’s record, he agrees with Dr. Hawkins that L.S.G. lacks the capacity to make a rational and
informed decision about whether or not to consent to the administration of medication. He also
agrees that treatment with the listed medications is the proper course of treatment for L.S.G. and that
the benefits will outweigh the risks. 
            On cross-examination, Dr. Plyler stated that L.S.G. had not expressed any religious or
constitutional reasons why she cannot take medication. He also knew of no adverse reactions L.S.G.
has suffered from taking medications. The doctor stated that without medications, she might
eventually improve, but it would take quite a while longer, if at all. He also gave assurances that if
a patient experiences adverse side effects to a medication, the hospital would discontinue its use for
that patient.
            L.S.G. testified on her own behalf. She claimed that she has experienced severe allergic
reactions to medications, but cannot remember the names of the medications. L.S.G. clarified that
she is not opposed to the use of medication in general, just the prescriptions that cause bad side
effects.
            In an order signed that day, the trial court authorized the hospital officials to treat L.S.G. with
psychoactive medication. This appeal followed.
Sufficiency of the Evidence
            In her first issue, L.S.G. asserts the evidence is neither legally nor factually sufficient to
support the order of commitment She complains that the State did not present evidence of an overt
act or a continuing pattern of behavior to support the commitment. In her second issue, L.S.G. asserts
the evidence is neither legally nor factually sufficient to support the order authorizing administration
of psychoactive medication. She argues that the State did not present clear and convincing evidence
that she lacked the capacity to make a decision regarding administration of psychoactive medication.



Standard of Review
            In a legal sufficiency review where the burden is clear and convincing, the reviewing court
must consider all of the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In re
J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. A court
should disregard all evidence that a reasonable factfinder could have disbelieved or found to have
been incredible. Id.
            In addressing a factual sufficiency challenge, we must consider all of the evidence in the
record, both that in support of and contrary to the trial court’s findings. In re C.H., 89 S.W.3d 17,
27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. Id. at 25. We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of
the State’s allegations. Id. We must consider whether disputed evidence is such that a reasonable
trier of fact could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. In re
C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the witnesses and
the weight to be given their testimony. See id. at 27; In re J.J.O.,131 S.W.3d 618, 632 (Tex.
App.–Fort Worth 2004, no pet.).
Involuntary Commitment Order
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness, she is likely to cause serious
harm to herself, is likely to cause serious harm to others, or is (1) suffering severe and abnormal
mental, emotional, or physical distress, (2) experiencing substantial mental or physical deterioration
of her ability to function independently, which is exhibited by her inability, except for reasons of
indigence, to provide for her basic needs, including food, clothing, health, or safety, and (3) unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health
& Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute,
the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the deterioration of her ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The State provided expert testimony explaining that L.S.G. is mentally ill, suffering from
bipolar I disorder. However, expert testimony confirming mental illness, standing alone, will not
support an involuntary commitment. E.g., T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.–Dallas 1999,
no pet.). In his certificate of medical examination, Dr. Lahi stated that L.S.G. is likely to cause
serious harm to herself. At the hearing, Dr. Srinivasan agreed. Dr. Lahi based his opinion, in part,
on a police report reflecting that L.S.G. had walked into traffic. Dr. Srinivasan’s opinion was also
based, in part, on the same incident. This is evidence that L.S.G. committed a recent overt act –
walking into oncoming traffic – which tends to confirm that L.S.G. is likely to cause serious harm to
herself. The trial court could have disbelieved L.S.G.’s testimony to the contrary. See In re J.F.C.,
96 S.W.3d at 266. 
            The State has the burden of establishing by clear and convincing evidence only one of the
additional requirements listed in section 574.034(a)(2). Mezick v. State, 920 S.W.2d 427, 430 (Tex.
App.–Houston [1st Dist.] 1996, no writ). The trial court found that L.S.G. was likely to cause serious
harm to herself. Considering all the evidence in the light most favorable to the findings, we conclude
a reasonable trier of fact could have formed a firm belief or conviction that this finding was true. See
In re J.F.C., 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial
court’s order. See id. Because only one statutory criteron must be met under section 574.034(a)(2)
to form the basis of the court’s order for temporary mental health services, we are not required to
decide whether there was sufficient evidence to satisfy the court’s second basis for commitment. See 
Mezick, 920 S.W.2d at 431. 
            In addressing L.S.G.’s factual sufficiency complaint, we consider the evidence the factfinder
could reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. There is some
evidence that L.S.G. owns her own car and, therefore, would have her transportation needs met. Dr.
Srinivasan also stated that L.S.G. is a cooperative patient. However, the doctor testified that L.S.G.
was brought to the hospital after she had been walking into oncoming traffic. He stated that L.S.G.
has yet to grieve after the death of her husband. He found her to be delusional, hyperactive, and
manic. We also consider Dr. Lahi’s physician’s certificate where he noted that L.S.G. stated that she
wanted to get into a nursing home, nobody cared for her, and her knee had been shot. Finally, we
consider L.S.G.’s testimony that she does not hear voices, that she does not remember saying that she
had been shot, and that if released, she would go straight to Alto to pick up her car.
            The trial court was entitled to disbelieve L.S.G.’s testimony and disregard evidence contrary
to the State’s position. See In re C.H., 89 S.W.3d at 27. Accordingly, in light of the entire record,
the evidence that the trial court could not have credited in favor of its findings is not so significant
that it could not reasonably form a firm belief or conviction that L.S.G. is mentally ill and is likely
to harm herself. See id. Thus, the evidence is factually sufficient to support the trial court’s findings. 
Because we hold the evidence is both legally and factually sufficient to support the trial court’s order, 
we overrule L.S.G.’s first issue.
Psychoactive Medication
            In her second issue, T.A. asserts the evidence is legally and factually insufficient to support
the order authorizing administration of psychoactive medication. She argues that such an order must
be based on a valid order for inpatient mental health care and, due to the reasons asserted in her first
issue, the trial court’s order for inpatient mental health care is not valid.
            The court may enter an order authorizing the administration of psychoactive medication if it
finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). In determining that there
is a need for psychoactive medication, the court is required to consider (1) the patient’s expressed
preferences regarding treatment with psychoactive medication; (2) the patient’s religious beliefs; (3)
the risks and benefits, from the perspective of the patient, of taking psychoactive medication; (4) the
consequences to the patient if the psychoactive medication is not administered; (5) the prognosis for
the patient if the patient is treated with psychoactive medication; and (6) alternatives to treatment with
psychoactive medication. Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003).
            At the hearing on the State’s application for court-ordered administration of psychoactive
medication, Dr. Plyler agreed with Dr. Hawkins’s assessment that L.S.G. lacks the capacity to make
a rational and informed decision to consent to the administration of medication. The doctor testified
that treatment with the medications indicated on the application is in L.S.G.’s best interest and would
shorten her hospital stay. On cross-examination, Dr. Plyler stated that L.S.G. had not expressed any
religious or constitutional reasons why she cannot take medication. He also knew of no adverse
reactions L.S.G. has suffered. 
            L.S.G. testified on her own behalf, claiming that she has experienced severe allergic reactions
to medications in the past, but cannot remember the names of such medications. She stated that she
is not opposed to medication in general, only the prescriptions that cause bad side effects. Dr. Plyler
stated that if a patient suffers adverse effects, they would discontinue that medication’s use for that
patient.
            Considering all of the evidence in the light most favorable to the finding, we conclude that
a reasonable trier of fact could have formed a firm belief or conviction that L.S.G. lacks the capacity
to make a decision regarding the administration of psychoactive medication. The evidence is legally
sufficient to support the order. See In re J.F.C., 96 S.W.3d at 266. In reviewing factual sufficiency,
we consider all of the evidence and give due consideration to evidence the factfinder could reasonably
have found to be clear and convincing. See In re C.H., 895 S.W.3d at 25, 27-29. The doctor stated
that L.S.G. lacks the capacity to make a rational and informed decision to consent to the
administration of medication. The trial court could disregard L.S.G.’s testimony and rely entirely on
the doctor’s testimony. See In re C.H., 89 S.W.3d at 27. Accordingly, the evidence is such that the
trial court could reasonably form a firm belief or conviction about the truth of the State’s allegations. 
See id. at 25. Thus, the evidence is factually sufficient to support the trial court’s findings. We reject
L.S.G.’s argument that the order authorizing administration of psychoactive medication is not
supported by clear and convincing evidence. See Tex. Health & Safety Code Ann. § 574.106(a). 
We overrule L.S.G.’s second issue.
Disposition
            Having overruled each of L.S.G.’s issues, we affirm the trial court’s orders of commitment
for temporary inpatient mental health services and for administration of psychoactive medication. 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice
 
 
Opinion delivered March 31, 2005.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.
 
 
 
 
 
 
 
 
(PUBLISH)